## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

CARMEN WYMER, individually
and GARY MILLER individually
and on behalf of all others similarly situated,

     Plaintiffs,

v.           CIVIL ACTION NO. 3:10-0865

HUNTINGTON BANK
CHARLESTON, N.A., and
PHILIP B. HEREFORD,

     Defendants.

### MEMORANDUM OPINION AND ORDER

   Pending before the Court is Plaintiffs Carmen Wymer and Gary Miller's Motion to

Certify Class. [ECF No. 50]. Defendants Huntington Bank Charleston, N.A. (Huntington Bank) and

Philip B. Hereford oppose the motion. On October 21, 2011, the Court held a hearing on the motion.

Upon consideration of the arguments made by the parties, the Court **DENIES** Plaintiffs' motion for

the following reasons.

### I.
### FACTUAL AND
### PROCEDURAL HISTORY

   On June 24, 2010, Plaintiff Carmen Wymer filed this suit upon behalf of herself and

others similarly situated against Defendants. Nearly a year later, Ms. Wymer filed a motion to file

a Second Amended Complaint[1] to add Gary Miller as a named party and as the class representative

for the putative class. On October 4, 2011, the Court granted the motion.

---

[1]On November 16, 2010, Ms. Wymer filed a First Amended Complaint.

In the Second Amended Complaint, Ms. Wymer and Mr. Miller assert individual claims and Mr. Miller asserts claims on behalf of the putative class.  Ms.  Wymer and Mr. Miller's general allegations are that they both obtained home loans from Defendant Huntington Bank secured by a form Deed of Trust.  According to Plaintiffs, both the Notes and the Deeds of Trust prohibit the collection of attorneys' fees.  Nevertheless, Plaintiffs claim that, when it attempted to collect on the loans, Huntington Bank represented to Plaintiffs on multiple occasions that attorneys' fees were being assessed to their accounts.  Plaintiffs also claim that late fees were assessed against them for months in which payments were made within the contractual time period in which late fees could not be assessed, and Huntington Bank misrepresented the ability to make partial payments.  Plaintiffs further allege that Mr. Hereford used a form notice of foreclosure that is invalid under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692g(a).  Lastly, Ms. Wymer claims that Huntington Bank made direct contact with her in attempting to collect a debt, despite the fact it was made aware that she was represented by counsel.

With respect to the specific class claims at issue here, Mr. Miller asserts claims on behalf of the putative class in Count I and II.[2]  Count I is brought against Huntington Bank for allegedly assessing illegal attorney fees.  The parties agree that there actually are two claims under Count I.  First, there is a contract claim and, second, there is a claim that Huntington Bank's actions violated the West Virginia Consumer Protection Act (WVCCPA).  Specifically, Mr. Miller states that "Defendant Huntington Bank routinely misrepresented, in form notices, that it would collect and had the right to collect, attorneys' fees from West Virginia borrower accounts despite form

---

[2]Counts III, IV, and V are Plaintiffs' individual claims.

contract provisions prohibiting the assessment of such fees," and assessed such fees in violation of contract and West Virginia Code §§ 46A-2-127 and -128.[3] *Sec. Amend. Compl.* ¶¶ 28, 33-35. Plaintiffs seek to certify a class that "consists of all consumer borrowers in West Virginia whose loans were/are serviced by Huntington Bank anytime after that date ten years immediately preceding the filing of this action, and whose loans were/are secured by the form Fannie Mae/Freddie Mac Uniform Instrument deed of trust." *Id.* at ¶ 29.

In Count II, Plaintiffs claim that Mr. Hereford "routinely violates the FDCPA by failing to provide a proper validation notice." *Id.* at ¶ 41  Therefore, Plaintiffs seek to certify a class which "consists of all consumer borrowers in West Virginia who had foreclosure proceedings instituted by Defendant Hereford any time after that date one year immediately preceding the filing

---

[3]West Virginia Code § 46A-2-127 provides, in part:

> No debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:
>
> *        *        *
>
> (g) Any representation that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation;

W. Va. Code § 46A-2-127(g). West Virginia Code § 46A-2-128 states, in part: "No debt collector shall use unfair or unconscionable means to collect or attempt to collect any claim." W. Va. Code § 46A-2-128(d).

of this action." *Id*. at ¶ 37.[4]   Defendants challenge Mr. Miller's ability to serve as the class representative for both of these counts.  For the following reasons, the Court agrees that Mr. Miller is an inadequate representative of the class.

## II.
## DISCUSSION

Rule 23 of the Federal Rules of Civil Procedure provides the standard for class certification, and a proposed class must qualify under both Rule 23(a) and Rule 23(b).  Mr. Miller seeks to certify the class under subsection (b)(3).[5]  Therefore, to maintain a class action, Mr. Miller

---

[4]In Counts III, IV, and V, Plaintiffs make individual claims.  In Count III, both Plaintiffs assert that Huntington Bank improperly returned their payments in violation of West Virginia law. In Count IV, both Plaintiffs contend that Huntington Bank improperly assessed late fees.  Finally, in Count V, Ms. Wymer asserts a claim of illegal debt collection.

[5]Rule 23 states, in part:

> **(a)** **Prerequisites.**  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> > **(1)** the class is so numerous that joinder of all members is impracticable;
> >
> > **(2)** there are questions of law or fact common to the class;
> >
> > **(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> >
> > **(4)** the representative parties will fairly and adequately protect the interests of the class.
>
> **(b)** **Types of Class Actions.**  A class action may be maintained if Rule 23(a) is satisfied and if:

(continued...)

-4-

bears the burden to satisfy all four provisions under subsection (a) which consists of "(1) numerosity of parties; (2) commonality of factual and legal issues; (3) typicality of claims and defenses of class representatives; and (4) adequacy of representation." *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 423 (4th Cir. 2003) (citing Fed. R. Civ. P. 23(a)).  In addition, Mr. Miller must demonstrate under subsection (b)(3) "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other

---

[5](...continued)

\*     \*     \*

**(3)**     the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

**(A)**     the class members' interests in individually controlling the prosecution or defense of separate actions;

**(B)**     the extent and nature of any litigation concerning the controversy already begun by or against class members;

**(C)**     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

**(D)**     the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(a) and (b)(3).

available methods for fairly and efficiently adjudicating the controversy." *Fed. R. Civ. P.* 23(b)(3), in part.

It is important to recognize that Rule 23(a) is more than a pleading rule. *Wal–Mart Stores, Inc., v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  This Court must undertake a "rigorous analysis" in determining whether Plaintiff has met his burden. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).  To do so, the Court often must look at the elements of each cause of action in light of Rule 23, which may implicate the merits of the claim and may require the Court to resolve legal and factual disputes. *Wal-Mart*, 131 S. Ct. at 2551; *Falcon*, 457 U.S. at 160.  As the Fourth Circuit explained in *Gariety v. Grant Thornton, LLP*, 368 F.3d 356 (4th Cir. 2004), if a court simply could accept the face value of the allegations in a complaint for purposes of a class action, "every complaint asserting the requirements of Rule 23(a) and (b) would automatically lead to a certification order, frustrating the district court's responsibilities for taking a 'close look' at relevant matters, for conducting a 'rigorous analysis' of such matters, and for making 'findings' that the requirements of Rule 23 have been satisfied[.]" 368 F.3d at 365 (citations omitted).

In conducting this inquiry with respect to the class allegations in this case, the Court finds a fundamental problem exists as to Mr. Miller's ability to represent the purported under the commonality, typicality, and adequacy of representation requirements.  Under Rule 23(a)(2), commonality is generally met when the claims "are questions of law or fact common to the class." *Fed. R. Civ. P.* 23(a)(2).  In *Wal-Mart,* the Supreme Court recently clarified that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and

-6-

that the claim "depend[s] upon a common contention" that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 156).

When, as here, a class action is brought pursuant to Rule 23(b)(3), the Rule 23(a)(2) commonality requirement is subsumed under, or superceded by, Rule 23(b)(3)'s more stringent "requirement that questions common to the class predominate over other questions." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 n. 4 (4th Cir. 2001) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997) (internal quotation marks omitted)).  Rule 23(b)(3)'s more demanding standard mandates a court examine whether the "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623 (citation omitted).  In other words, to satisfy Rule 23(b)(3), "[c]ommon questions must predominate over any questions affecting only individual members; . . . [such that] a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated[.]" *Id.* at 615 (internal quotation marks omitted).

In addition, the Supreme Court has made it clear that the adequacy-of-representation requirement in Rule 23(a)(4) "tend[s] to merge" with Rule 23(a)'s commonality and typicality criteria, which "serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457

U.S. at 157, n. 13.  In short, the "class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Wal-Mart*, 131 S. Ct. at 2550 (internal quotation marks and citations omitted).  The named plaintiff must be an appropriate class representative of the class claims, and Rule 23's requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Id.* (internal quotation marks and citations omitted).

In *Deiter v. Microsoft Corp.*, 436 F.3d 461 (4th Cir. 2006), the Fourth Circuit explained that the class representative's "claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." 436 F.3d at 466-67.  Typicality requires a court to compare a plaintiff's claims or defenses with those of the putative class members. *Id.* at 467.  Although claims must not be "perfectly identical or perfectly aligned, . . . when the variation in claims strikes at the heart of the respective causes of actions," class certification should be denied. *Id.*  In addition, if there exists a unique defense to the class representative's claim and that defense could become the focus of litigation to the detriment of the class, the Court may find the named plaintiff incapable of adequately representing the putative class. *See German v. Fed. Home Loan Mortg. Corp.*, 168 F.R.D. 145, 154 (S.D. NY 1996) (stating "[t]o defeat class representation, any allegations concerning the representative's adequacy must be relevant to the claims in the litigation, such that the problems 'could become the focus of cross-examination and unique defenses at trial, to the detriment of the class" (internal quotation marks and citation omitted)).  Applying these standards, the Court finds that Mr. Miller is not a proper class representative for either of the claims in Count I and Count II.

**A.**
**The Contract Claim**

With respect to the contract claim, Plaintiffs allege that the Deeds of Trust and the Notes prohibit the collection of attorney fees and such fees were routinely assessed to borrower accounts in breach of the contracts. *Sec. Amend. Compl.* ¶¶ 5, 6, and 34.  Plaintiffs concede that in order to establish a breach of contract claim under West Virginia law, there must be evidence of actual damages. *See Wince v. Easterbrooke Cellular Corp.*, 681 F. Supp.2d 688, 693 (N.D. W. Va. 2010) (stating for a breach of contract claim, a plaintiff must allege "the existence of a valid, enforceable contract, that the plaintiff has performed under the contract, that the defendant has breached or violated its duties or obligations under the contract, *and that the plaintiff has been injured as a result*" (emphasis original; internal quotation marks and citation omitted)).  In this case, however, Mr. Miller stated in his deposition that he is unsure whether he ever paid any attorney fees. *Miller Dep.*, 64:2-20, July 11, 2011.  On the other hand, Huntington Bank submitted a Declaration by Gene Maki, an Assistant Vice President in the Bank's foreclosure area, in which he avers that none of Mr. Miller's payments were ever applied to pay attorney fees.[6]  Given Mr. Miller's inability to set forth any evidence to support his allegation that he paid attorney fees, and Huntington Bank's affirmative evidence to the contrary, Mr. Miller simply has failed to demonstrate that he even has a viable breach of contract claim and that he is qualified to represent those who he asserts have valid claims.  At the very least, Huntington Bank has raised a significant defense that is likely to become the focus of litigation of his claim to the detriment of the putative class.  Accordingly, the Court

---

[6]Mr. Maki said the same about Ms. Wymer's account.

finds Mr. Miller has failed to meet his burden of showing that he can serve as an adequate class representative on the breach of contract claim.

## B.
## WVCCPA Claim

Turning next to the WVCCPA claim in Count I, Mr. Miller asserts Huntington Bank's form notices violate the Act by containing misrepresentations that it has the right to collect attorneys' fees. In his case, Mr. Miller received a Notice of Right to Cure Default, which contains language stating Mr. Miller could cure his default by paying $4,622.26 by a date certain. If the amount was not paid by that date, the bank would accelerate his mortgage and he would be "required to repay the entire mortgage balance in full" and the Bank's attorney would be instructed to initiate foreclosure proceedings. The Notice further stated Mr. Miller still had the right to reinstate his "mortgage after acceleration by paying all amounts due at that time, including . . . [the Bank's] legal expenses." *Notice of Right to Cure Default* (Nov. 13, 2010).

However, Mr. Miller admits that the Notice of Right to Cure Default actually was attached to another letter in which Huntington Bank acknowledged that Mr. Miller's debt had been discharged in bankruptcy. Specifically, this letter provided that the Notice was "not an attempt to collect a debt or a request for payment, but [it was being provided] to advise . . . [Mr. Miller] of . . . [his] state law rights." *Attachment to Notice–Obligations Affected by Bankruptcy Proceedings*. The letter plainly stated that Mr. Miller's bankruptcy released him from personal liability on the debt, and that, although the Bank retained a valid lien on the property, he was "not obligated to make any further payments" if he did not want to keep it. The letter further provided he "may disregard any

-10-

language in the Notice that indicates . . . [he] will be pursued for a deficiency judgment or that . . . [he] will be held personally responsible for the debt." *Id*.

On December 16, 2010, Mr. Miller received another letter from the Bank informing him that foreclosure proceedings were being initiated, but there were still options available to him if he wanted to keep his house.  The letter stated that Mr. Miller's "attention to this matter is imperative since the foreclosure process has begun." *Letter from Huntington Mortgage to Gary A. Miller* (Dec. 16, 2010).  It then stated Mr. Miller would "be responsible for any foreclosure fees and expenses incurred by this action." *Id*.

Mr. Miller asserts these letters violate the WVCCPA because they attempt to collect attorney fees in violation of the Act.  However, Huntington Bank asserts that these letters do not violate the Act,[7] and Mr. Miller is an inadequate class representative because he went through bankruptcy.  Upon review, the Court agrees that Mr. Miller's situation is atypical of the class he seeks to represent, and his claim is subject to a unique defense that likely will predominate the litigation.  Specifically, it is clear that Huntington Bank will challenge Mr. Miller's allegation that the letters he received were attempts to collect upon a debt because it fully acknowledged Mr. Miller's debts were discharged in bankruptcy.  The fact the Bank stated that Mr. Miller was not

---

[7]Huntington Bank asserts that the Notice of the Right to Cure Default correctly informs Mr. Miller that the Bank could accelerate the balance and, in that event, include legal expenses in the reinstatement amount.  In addition, the Bank argues there is nothing in the December 16, 2010 letter which states Mr. Miller will have to pay "attorney" fees.  Mr. Miller testified at his deposition that he merely interpreted the phrase "foreclosure fees and expenses incurred in this action" to mean attorney fees based upon a prior phone conversation he had with a representative of Huntington Mortgage. *Miller Dep.*, 65:22-24; 66:1-10; and 94:1-24.

personally liable to pay anything to the Bank strikes at the very heart of his claim and makes it distinguishable from those putative class members who did not declare bankruptcy. Certainly, Huntington Bank will raise this fact as a defense to Mr. Miller's claim, and this issue likely will become a major focus in his case as it may be dispositive of his individual case. Although the Court does not rule on the merits of this defense, it is sufficient that the Court finds Mr. Miller's bankruptcy and the Bank's expressed recognition of this fact will become a major controversy which will predominate the validity of his individual claim. Therefore, the Court agrees with Huntington Bank that Mr. Miller has failed to meet his burden of showing that he is an adequate representative of the purported class on the WVCCPA claim.

## C.
### FDCPA Claim

Mr. Hereford asserts that a similar result should occur with respect to the FDCPA in Count II against him. Mr. Hereford's primary argument against the motion for class certification on this claim is that Plaintiff is an inadequate class representative because he cannot show that he suffered any injury as a result of a violation of the FDCPA. Thus, Mr. Hereford argues Mr. Miller lacks standing on his individual claim. However, the Court has little difficulty finding that Plaintiff need not prove he suffered actual harm to state a claim under the FDCPA. *See Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003) (recognizing that "courts have held that actual damages are not required for standing under the FDCPA" (citations omitted)); *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F. Supp.2d 200, 210 (E.D. N.Y. 2009) (awarding $500 in statutory damages under the FDCPA where the plaintiff suffered no actual damages); *Altergott v. Modern Collection Techniques, Inc.*, No. 93 C 4312, 1994 WL 319229, at *4 (N.D. Ill. 1994) (stating the plaintiff in FDCPA case "need not prove actual damages to recover statutory damages" (citation

omitted)).  Therefore, the Court will not deny class certification on this basis.  Nevertheless, the Court still must consider whether the fact Mr. Miller filed bankruptcy impacts his ability to represent the purported class.

In considering this issue, it is necessary for the Court to touch upon the merits of Mr. Miller's claim against Mr. Hereford.  According to Mr. Hereford, counsel for Mr. Miller contacted him in early 2011 and asked him for a payment history.  Mr. Hereford obtained a copy of Mr. Miller's account activity from the Bank and he provided it to counsel on March 14, 2011.  On April 12, 2011, Mr. Hereford sent Mr. Miller a letter stating that he was the Substitute Trustee under the Deed of Trust and that Huntington Bank has elected to sell the property.  A "Notice of Trustee's Sale" was attached to the letter.  The letter and the Notice does not include any amount due or ask for any payments.  They only inform Mr. Miller that the property will be sold.  Thereafter, Plaintiff's counsel contacted Mr. Hereford and asked that the foreclosure be postponed.  Mr. Hereford agreed to continue the sale.  Mr. Miller was then added as a named party and the class representative in this putative class action.

It appears that Mr. Hereford's contact with Mr. Miller and his counsel was limited to providing him a copy of Mr. Miller's account activity (at Mr. Miller's counsel's request), and notifying Mr. Miller of the sale.  Mr. Miller has presented no evidence that Mr. Hereford made any effort to collect any money from him–except to the extent the foreclosure itself can be considered a debt collection.  Mr. Miller asserts, however, that Mr. Hereford violated 15 U.S.C. § 1692g(a)

because he failed to provide him a validation notice before he sent him the foreclosure notice.

Section 1692g(a) provides:

> (a) Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). The questions then become (1) whether Mr. Hereford qualifies as a debt collector; (2) whether Mr. Hereford's actions qualify as a debt collection; and (3) whether the fact that Mr. Miller was not personally liable for any debt as a result of the bankruptcy creates a unique defense that likely will predominate this litigation to the detriment of the putative class.

Although the parties have not briefed these issues, the Court finds the Fourth Circuit's decision in *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373 (4th Cir. 2006), instructive as to the first two questions.  In *Wilson*, the plaintiff filed an action against the law firm of Draper & Goldberg, P.L.L.C. and one of its lawyers for violations of the FDCPA in connection with a foreclosure. 443 F.3d at 374.  The defendants wrote the plaintiff a letter on September 2, 2003, stating the plaintiff was in default of her loan and her property was subject to foreclosure. *Id*. The letter specifically stated it was "'an attempt to collect a debt,'" but the notice stated the "[d]efendants were not 'debt collectors' or acting in connection with the collection of a 'debt.'" *Id*. at 374-75 (citation omitted).  Shortly after getting the letter, the plaintiff disputed the debts and asked the defendants to get verification from the bank.  Just nine days after the September 2 letter, the defendants began foreclosure proceedings. *Id*. at 375.

A week later, plaintiff's counsel contacted the defendants to inform them he was representing the plaintiff and future communications should be with him. *Id*.  Nevertheless, the defendants' "Sales Department" sent a letter dated October 6 directly to the plaintiff informing her that her house would be sold on October 17, 2003.  This letter also "stated it was an attempt to collect a debt." *Id*. (citation omitted).

Shortly thereafter, plaintiff's counsel requested a complete statement of her account. On October 15, the defendants again directly wrote the plaintiff providing her with a reinstatement amount and stating that all payments should be made payable to the bank and sent to the defendants. *Id*.  This letter also stated it was "an attempt to collect a debt." *Id*. (internal quotation marks and

citation omitted).   Ultimately, the plaintiff resolved her dispute with the bank prior to the foreclosure, but she filed suit against the defendants for violating the FDCPA. *Id*.  The district court granted summary judgment in favor of the defendants by finding that a trustee on a deed of trust who forecloses on the property is not a debt collector under the FDCPA and the actions of the trustee cannot be said to violate the Act.   On appeal, the Fourth Circuit disagreed and reversed and remanded the case. *Id*.

In making its decision, the Fourth Circuit first looked to the definition of a "debt" under the Act.  Section 1692a(5) defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Relying upon this definition, the Fourth Circuit rejected the "[d]efendants' argument that they were not acting in connection with a 'debt.'" *Id*. at 376.   The Fourth Circuit noted the defendants communicated with the plaintiff about being in default of her mortgage payments and informed her that the bank accelerated her debt, entitling it to immediate payment of the balance together with fees, penalties and interest.   The Fourth Circuit found these amounts constitute "'debts' under the Act, because they were 'obligation[s] . . . to pay money arising out of a transaction in which the . . . property . . . which [is] the subject of the transaction [is] primarily for personal, family, or household purposes.'" *Id*. (quoting 15 U.S.C.A. § 1692a(5)).

Next, the Fourth Circuit held that the plaintiff's "'debt' remained a 'debt' even after foreclosure proceedings commenced."[8] *Id*.  The Fourth Circuit recognized that, if the defendants were immunized from the FDCPA by proceeding *in rem* rather than *in personam*, it would create a huge loophole and undermine the Act's purpose, which the Fourth Circuit would not allow. *Id*. (citing *Piper v. Portnoff Law Assoc.*, 396 F.3d 227, 236 (3d Cir. 2005)).  Moreover, the defendants' October 15 letter requested payment be sent to the defendants for reinstatement of the plaintiff's account even though the foreclosure process already had begun. *Id*. 376-77.  Thus, the letter was an attempt to collect upon the debt. *Id*. at 377.

The defendants next argued that, even if they acted in connection with a debt, they fell within an exception to the definition of a "debt collector" under the Act. *Id*.  Section 1692a(6) defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6), in part.  Section 1692a(6)(F)(i) provides, in part, however, that a "debt collector" does not include "any person collecting or attempting to collect any . . . due another to the extent such activity . . . is incidental to a bona fide fiduciary obligation[.]" 15

---

[8]The Fourth Court disagreed with the holdings in *Hulse v. Ocwen Federal Bank, FSB*, 195 F. Supp.2d 1188, 1204 (D. Or. 2002) (reasoning that "foreclosing on a deed of trust is an entirely different path [than collecting funds from a debtor]. Payment of funds is not the object of the foreclosure action.  Rather, the lender is foreclosing its interest in the property"), and *Heinemann v. Jim Walter Homes, Inc.*, 47 F. Supp.2d 716, 722 (N.D. W. Va. 1998), *aff'd*, 173 F.3d 850 (4th Cir. 1999) (unpublished table decision) ("stating that, to the extent the *pro se* complaint could be read to allege violation of the Act within the statute of limitations, the Act would not apply '[s]ince the trustees were not collecting on the debt at that time but merely foreclosing on the property pursuant to the deed of trust'"). *Id*.

U.S.C. § 1692a(6)(F)(i). Although the defendants argued they fell within this exception because they were acting as fiduciaries, the Fourth Circuit stated that, in a situation in which a trustee is foreclosing under a deed of trust, the actions of the trustee are not merely "incidental" to the fiduciary obligation but, rather, they are central to the trustee's obligations. 443 F.3d at 377. Therefore, the Fourth Circuit held that the defendants were not protected by the exception. In addition, the Fourth Circuit recognized the fact the defendants were lawyers did not protect them under the fiduciary exception because "it is well-established that lawyers can be 'debt collectors' even if conducting litigation." *Id*. at 378 (citing *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995)). "If the principal purpose of the lawyer's work is the collection of debts, he is a 'debt collector' under the Act." *Id*. (citation omitted).

Finally, the defendants attempt to argue the Complaint alleges they violated portions of the FDCPA that do not apply to them because they were engaged in a business of enforcing security interests so they only can be liable under § 1692f(6),[9] and the plaintiff did not allege a

---

[9]Section 1692f(6) states:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> * * *

> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--

(continued...)

violation of that section. In support, the defendant specifically point to that portion of the definition of "debt collector" which provides: "For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. §1692a(6). The Fourth Circuit interpreted this section as one of inclusion rather than an exception to the definition of a debt collector. Specifically, the Fourth Circuit stated the "provision applies to those whose *only* role in the debt collection process is the enforcement of a security interest. . . . It does not exclude those who enforce security interests but who also fall under the general definition of 'debt collector.'" *Id.* (italics original; *citing Piper*, 396 F.3d at 236 ("Section 1692a(6) thus recognizes that there are people who engage in the business of repossessing property, whose business does not primarily involve communicating with debtors in an effort to secure payment of debts.")). Therefore, the Fourth Circuit concluded that the defendants were covered by the entire Act, not just § 1692f(6), as they met the statutory definition of "debt collector." *Id.*

---

[9](...continued)

        (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

        (B) there is no present intention to take possession of the property; or

        (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f(6).

-19-

In the present case, the parties attached limited portions of Mr. Hereford's deposition as exhibits.  At his deposition, Mr. Hereford said that 35 to 40 percent of his practice is foreclosure work, which entails acting as the trustee and preparing and sending out a notice of foreclosure. Other than a cover letter, a substitution of trustee (if applicable), and the notice of foreclosure, Mr. Hereford stated he has no other written communications with borrowers.  Mr. Hereford asserted that the bank calculates the reinstatement amount and he has no role in that process.  If a borrower, however, comes to his office or the courthouse steps and presents him with a reinstatement check to prevent the foreclosure, he will accept the check, forward it to the bank, and stop the foreclosure. He stated that he prefers that the checks be made directly to the bank, but if it is made out to him, he will deposit it and then send the money to the bank.  In addition, if a borrower calls his office about reinstatement, he asks the borrower what he or she believes the reinstatement amount is and then he will confirm that amount with the bank.

Although Mr. Hereford's involvement in the debt collection process is not nearly as extensive as the lawyers in *Wilson*, the Court will assume for purposes of the class certification motion *only* that Mr. Hereford qualifies as a debt collector under the Act in at least those cases in which he collected payments.  Nevertheless, this assumption does not resolve the issue of whether he attempted to collect a debt from Mr. Miller in violation of the Act and what impact that issue will have on Mr. Miller's ability to adequately serve as the class representative.  With respect to his claim, Mr. Miller has presented no evidence that Mr. Hereford did anything other than send him the Notice of Foreclosure Sale with a cover letter and send his counsel a copy of his payment history. There is no evidence Mr. Hereford ever demanded any payments from Mr. Miller or, for that matter,

had any discussions with Mr. Miller about reinstatement amounts.  Likewise, Mr. Hereford never

accepted any payments from Mr. Miller.  Mr. Hereford's role in Mr. Miller's case appears to be

limited *only* to the enforcement of the security interest.

The Court sees Mr. Miller's situation as creating two problems for purposes of class

certification.  First, the Court foresees a significant dispute arising between the parties as to whether

Mr. Hereford's actions should be considered a debt collection for all putative class members even

if his only contact with some of the borrowers was the notice of enforcement of the security interest.

If the answer to that question is no, then there will need to be individual inquires made in each

putative class member's case to determine what contact Mr. Hereford had with each member, which

certainly weighs against class certification.  Second, as with his WVCCPA claim, Mr. Miller's

bankruptcy raises an additional level of complication to his FDCPA claim.  It is clear Mr. Hereford

is likely to argue that, not only did he have no communication with Mr. Miller "in connection with

the collection of any debt," but Mr. Miller owed no "debt" because his "debt" was discharged in

bankruptcy.  Thus, the argument goes that Mr. Miller's FDCPA claim must fail.[10]

With respect to these likely disputes, however, the Court need not, and does not,

make any ruling on the merits.  Nevertheless, the Court finds these arguments strike at the very heart

---

[10]Another potential issue which could be raised by the parties is the interplay of bankruptcy with the requirements of the FDCPA. *See, e.g., Maloy v. Phillips*, 197 B.R. 721, 723 (M.D. Ga. 1996) (holding that automatic stay provision for bankruptcy found in 11 U.S.C. § 362(a)(6) "prohibits a collector from sending the notice required by § 1692g" of the FDCPA); *but see Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) (finding a debt collector can comply with both the bankruptcy statutes and the FDCPA simultaneously).

of Mr. Miller's claim. In particular, Mr. Hereford stated in his deposition that he took reinstatement checks from borrowers "many times" to stop foreclosures. *Hereford Dep.* 26:21. Those borrowers who actually paid their debt directly to Mr. Hereford may have a much stronger case under the FDCPA than Mr. Miller, who never gave Mr. Hereford any money. At the very least, Mr. Miller's bankruptcy presents a unique defense in his case which could become the focus of litigation to the detriment of those purported class members who actually owed a "debt," because they had not gone through bankruptcy, when they received a Notice of Foreclosure Sale from Mr. Hereford. Given these variations in Mr. Miller's case from those of the other putative class members, the Court finds Mr. Miller has failed to meet his burden of showing he can adequately represent the putative class.

### D.
### Substitution of Class Representative

Finally, Plaintiffs argue that, if the Court finds Mr. Miller is an inadequate representative on any of its claims, they be allowed to file a third amended complaint and name a different class representative. However, the Court is not inclined to allow yet another amendment at this late date. This Court already has permitted Plaintiffs to amend their Complaint on two occasions, which most recently substituted Mr. Miller for Ms. Wymer as the class representative. After a year of discovery, Mr. Miller apparently was the best potential class representative Plaintiffs could find. Yet, as stated above, he has failed to meet his burden that he can adequately represent the class. The Court will not allow Plaintiffs to go on an endless hunt for a named representative. At this point, Defendants are entitled to some certainty about the claims they confront and who the named representative is. As this case already has been pending for nearly fifteen months, the Court **DENIES** Plaintiffs' request to find and substitute another class representative.

**III.**
**CONCLUSION**

Accordingly, given Mr. Miller's failure to meet his burden to show that he can adequately serve as the named class representative, the Court **DENIES** Plaintiffs' Motion to Certify Class. [ECF 50].


The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.


ENTER:        November 14, 2011

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE